## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARK ROBERSON**,

        Plaintiff,

    vs.                                                                         No. CIV 04-1284 MCA/DJS

**CITY OF ALBUQUERQUE**,
a municipal corporation, and
**CITY COUNCILWOMAN**
**SALLY MAYER**, in her official
and individual capacities,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

    **THIS MATTER** comes before the Court on *Plaintiff's Motion for Summary Judgment and for Declaratory Ruling that Albuquerque City Ordinance 9-2-3-18 is Unconstitutional* [Doc. 21] filed on October 17, 2005, and the Court's *sua sponte* inquiry as to whether Plaintiff's claims under 42 U.S.C. § 1983 and the United States Constitution meet the requirements of ripeness necessary to properly invoke federal jurisdiction at this time. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies Plaintiff's motion and orders the parties to show cause in writing by no later than January 23, 2006, as to why Plaintiff's federal constitutional claims should not be dismissed and why any remaining claims should not be remanded to the

Second Judicial District Court for the State of New Mexico, County of Bernalillo, pursuant to 28 U.S.C. § 1447(c).

## I.   **BACKGROUND**

On October 8, 2004, Plaintiff filed a civil action against Defendants City of Albuquerque and City Councilor Sally Mayer in the Second Judicial District Court of the State of New Mexico, County of Bernalillo.  [Doc. 2.]  Plaintiff's *Complaint* alleges that Defendants breached a settlement agreement (Count 1), violated Plaintiff's constitutional right to due process (Count 2), took Plaintiff's property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution (Count 3), made untrue statements which defamed Plaintiff (Count 4), converted Plaintiff's property (Count 5), created a bailment with respect to Plaintiff's property and then breached their duties under that bailment (Count 6), and were negligent with respect to the loss of Plaintiff's property (Count 7).

These allegations arise from an incident on April 23, 2004, in which Defendants denied or revoked a permit for Plaintiff's pet store, "the Puppy Patch," and took possession of 28 dogs located therein pursuant to Albuquerque City Ordinance 9-2-3-18, which provides that Defendants may take privately-owned animals into their "protective custody" upon a finding by the Mayor that the animal "is or will be without proper care because of injury, illness, incarceration or absence of the owner of such animal."  [Roberson Aff. ¶¶ 13-15.] After these events occurred, the parties entered into a settlement agreement memorialized in a letter dated May 6, 2004.  [Ex. G to Doc. 22.]  Under this agreement, Defendants were to

return at least two of the dogs to Plaintiff, and a third dog was to be transferred to a third party.   In their pleadings and briefs, both parties acknowledge that such a settlement agreement exists.  [Doc. 2, 3, 14.]

The settlement agreement did not provide a final resolution of the parties' dispute, however, because Defendants failed to return the dogs pursuant to this agreement.  Although they have not produced any evidence of a forced entry or other unauthorized access at the facility where the dogs were kept, Defendants surmise that the dogs were stolen while in their "protective custody" and, therefore, it was not possible for them to return the dogs to Plaintiffs.  Plaintiff now seeks monetary damages for the taking of the dogs (assuming they are not returned), reinstatement of his litter permit, and a declaratory judgment that the ordinance through which Defendants took custody of the dogs is unconstitutional and cannot be used to restrain his business activities.

Defendants were served with Plaintiff's *Complaint* on October 12, 2004.  They removed the action to the United States District Court for the District of New Mexico on November 12, 2004, based on the presence of one or more federal questions in Plaintiff's *Complaint*.  <u>See</u> 28 U.S.C. §§ 1441(b), 1446(a).  After the close of discovery, Plaintiff filed a motion for partial summary judgment concerning his due-process and takings claims under the Fifth and Fourteenth Amendments to the United States Constitution.  Defendants oppose Plaintiff's motion.  As explained in further detail below, the record in this case also raises significant questions about subject-matter jurisdiction which this Court must address *sua sponte*.

## II.   ANALYSIS

### A.   Standard of Review

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if it might affect the outcome of the case.  See id. at 248.

When the movant is also the party bearing the burden of persuasion on the claim for which he or she is seeking summary judgment, the movant must show that the record as a whole satisfies each essential element of his or her case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party.  See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir.  1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993).  But when the movant does not bear the burden of proof as to the claim or defense at issue in the motion, then judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

Apart from such limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

The filing of a summary judgment motion does not preclude the Court from raising the issue of subject-matter jurisdiction *sua sponte*.  See Sandy Creek Investors, Ltd. v. City of Jonestown, 325 F.3d 623, 626 (5th Cir. 2003); J.B. Ranch, Inc. v. Grand County, 958 F.2d

306, 308 (10th Cir. 1992).  Indeed, verifying its subject-matter jurisdiction is a federal court's "first duty" in every case, McCready v. White, 417 F.3d 700, 702 (7th Cir. 2005), and the Court's subject-matter jurisdiction must be established before it may independently rule on the merits of Plaintiff's motion for summary judgment, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-102 (1998); Sandy Creek Investors, Ltd., 325 F.3d at 626; J.B. Ranch, Inc., 958 F.2d at 308.

Ripeness is a question of subject-matter jurisdiction under Article III of the United States Constitution.  See Bateman v. City of West Bountiful, 89 F.3d 704, 706 (10th Cir. 1996); J.B. Ranch, Inc., 958 F.2d at 308.  The ripeness of Plaintiff's takings and due-process claims may be questioned *sua sponte*, see J.B. Ranch, Inc., 958 F.3d at 308, or by means of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), see Bateman, 89 F.3d at 706.  In either case, of course, the parties must be afforded adequate notice and opportunity to respond.  See Ricketts v. Midwest Nat'l Bank, 874 F.2d 1177, 1181-84 (7th Cir. 1989).

Motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms:  (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir.2002).  In reviewing a facial attack, the Court construes Plaintiff's pleading liberally, accepts all uncontroverted, well-pleaded factual allegations as true, and views all reasonable inferences in Plaintiff's favor.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir.

2001).  "In reviewing a  factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts,'" and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion.  Id. (quoting Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995)). Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

### B. Plaintiff's Federal Claims

Plaintiff has moved for summary judgment on his due-process and takings claims under the Fifth and Fourteenth Amendments to the United States Constitution.  For the reasons set forth below, I conclude that there are significant questions concerning the ripeness of the federal claims on which Plaintiff seeks summary judgment.  These questions implicate this Court's subject-matter jurisdiction over this action.   While the Court understands that it was Defendants who invoked federal jurisdiction by removing the case to this Court, subject-matter jurisdiction is nevertheless a prerequisite that must be satisfied before I have the power to grant summary judgment for either side.  See Rocky Mtn. Materials & Asphalt, Inc. v. Bd. of County Comm'rs of El Paso County, 972 F.2d 309, 311 (10th Cir. 1992); J.B. Ranch, Inc., 958 F.2d at 308; Sandy  Creek Investors, Ltd., 325 F.3d at 626.  Accordingly, Plaintiff's motion for summary judgment is denied, and my analysis turns to the issue of ripeness.

The Supreme Court has recognized that the Fifth Amendment's prohibition on the taking of private property without just compensation applies to the states by virtue of the Fourteenth Amendment.  See Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (citing Chicago B. & Q. R. Co. v. Chicago, 166 U.S. 226 (1897)).  It follows that Plaintiff's takings claims are properly analyzed under the Supreme Court's Fifth Amendment takings jurisprudence rather than a more generalized substantive due-process framework.  See Miller v. Campbell County, 945 F.2d 348, 352-53 (10th Cir. 1991).  In this regard, the Supreme Court has recently distinguished its takings jurisprudence from the more generalized substantive due-process inquiry and concluded that the question whether a governmental regulation or restriction on private property advances a substantial governmental interest "has no place in our takings jurisprudence" as a "free-standing takings test."  Lingle v. Chevron U.S.A. Inc., 125 S. Ct. 2074, 2083-87 (2005).

Inasmuch as Plaintiff alleges a procedural due-process claim regarding the adequacy of the procedures Defendants employed to deprive him of his property, such a claim also may subsumed by the Court's analysis of the ripeness of his takings claims.  See Rocky Mtn. Materials & Asphalt, Inc., 972 F.2d at 311; J.B. Ranch, Inc., 958 F.2d at 309; Miller, 945 F.2d at 352.  "When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, we have required the plaintiff to utilize the remedies applicable to the takings claim."  Rocky Mtn. Materials & Asphalt, Inc., 972 F.2d at 311.  In this context, "[i]t is appropriate . . . to subsume the more generalized Fourteenth Amendment due process

-8-

protections within the more particularized protections of the Just Compensation Clause." Miller, 945 F.2d at 352 (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). "A contrary holding . . . would enable a resourceful litigant to circumvent the ripeness requirements [for a takings claim] by alleging a more generalized due process . . . violation." Bateman, 89 F.3d at 709.

For these reasons, the Court analyzes Plaintiff's procedural due-process claim together with his takings claim. Ripeness is a concern as to both claims. See Rocky Mtn. Materials & Asphalt, Inc., 972 F.2d at 311.

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." Palazzolo, 533 U.S. at 617. Takings that require just compensation may occur in several ways. See Lingle, 125 S. Ct. at 2081-83. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." Id. at 2081.

The Supreme Court also has recognized a category of "regulatory takings" that may be compensable under the Fifth Amendment where government regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster." Id. In particular, government regulation may constitute a taking per se where it "requires an owner to suffer a permanent physical invasion of her property," or where it "completely deprive[s] an owner of 'all economically beneficial us[e]' of her property." Id. (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992)). Outside of these special categories,

regulatory takings are generally governed by the standards set forth in Penn Central Transp. Co. v. City of N.Y., 438 U.S. 104, 124 (1978), which depend on "a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action."  Palazzolo, 533 U.S. at 617.

While many of the authorities cited above concern the taking of real property without just compensation, the principles articulated therein may apply to the taking of personal property as well.  See, e.g., Brown v. Legal Found. of Wash., 538 U.S. 216 (2003) (analyzing a claim that a state law requiring the deposit of certain client funds into "interest on lawyers' trust accounts" (IOLTA) to fund the provision of legal services for the poor effected an uncompensated taking of the clients' property in violation of the Fifth Amendment); Rose Acre Farms, Inc. v. United States, 373 F.3d 1177 (Fed. Cir. 2004) (analyzing a claim that government regulation of egg sales from farms that tested positive for salmonella bacteria effected a taking requiring compensation under the Fifth Amendment). And while the parties cite no New Mexico authorities on point, the law in most jurisdictions now treats dogs and other pets as items of personal property, see Altman v. City of High Point, 330 F.3d 194, 201-204 (4th Cir. 2003), subject to the "'background principles of nuisance and property law' [which] independently restrict the owner's intended use of the property," Lingle, 125 S. Ct. at 2081 (quoting Lucas, 505 U.S. at 1026-32); see Porter v. DiBlasio, 93 F.3d 301, 310 (7th Cir. 1996).

In this case, Plaintiff's *Complaint* can be reasonably construed as alleging a direct government appropriation or physical taking of his dogs for the benefit of the public, as well as a regulatory taking occasioned by the onerous requirements he would have to satisfy in order to get his dogs back once they were in Defendants' "protective custody." Plaintiff's *Complaint* also can be reasonably construed as alleging such takings of his property on two occasions:   first when Defendants took possession of all the dogs in Plaintiff's pet store and denied or revoked his permits on April 23, 2004, and second when they failed to return the smaller number of dogs identified in the parties' settlement agreement by May 21, 2004.

I conclude that the first of these occurrences does not provide the basis for a viable federal claim under the Takings Clause of the Fifth Amendment or the Due Process Clause of the Fourteenth Amendment because it was quickly superseded by the parties' settlement agreement.  I also conclude that the second of these occurrences does not give rise to a viable takings or due-process claim at this time because such a claim is unripe.

There are two ripeness requirements which must be satisfied before the merits of a civil action for an unlawful taking without just compensation may be litigated in federal court.  First, Plaintiffs must satisfy a *finality* requirement by demonstrating that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985); accord Bateman, 89 F.3d at 706; Miller, 945 F.2d at 352.  Second, Plaintiffs also must satisfy an *exhaustion* requirement by showing that they have "sought compensation through the procedures the

State has provided for doing so." <u>Williamson County</u>, 473 U.S. at 194; <u>accord</u> <u>Bateman</u>, 89

F.3d at 708; <u>Miller</u>, 945 F.2d at 352.

 With respect to the finality requirement, the Supreme Court's takings jurisprudence

"uniformly reflect[s] an insistence on knowing the nature and extent of permitted

development before adjudicating the constitutionality of the regulations that purport to limit

it." <u>McDonald, Sommer & Frates v. Yolo County</u>, 477 U.S. 340, 351 (1986).  The Supreme

Court has explained this finality requirement as follows:

> a takings claim based on a law or regulation which is alleged to go too far in
> burdening property depends upon the landowner's first having followed
> reasonable and necessary steps to allow regulatory agencies to exercise their
> full discretion in considering development plans for the property, including the
> opportunity to grant any variances or waivers allowed by law.  As a general
> rule, until these ordinary processes have been followed the extent of the
> restriction on property is not known and a regulatory taking has not yet
> occurred.

<u>Palizzolo</u>, 533 U.S. at 620-21.  Before such processes have reached their conclusion, courts

cannot determine whether a regulation goes too far in burdening property rights because they

do not yet know how far the regulation goes.  <u>See</u> <u>id.</u> at 622; <u>McDonald, Sommer & Frates</u>,

477 U.S. at 348.

 Similar principles apply to Plaintiff's procedural due-process claim.  Due process is

a "flexible" concept that only "calls for such procedural protections as the particular situation

demands." <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).  Accordingly, there are

situations in which no pre-deprivation hearing is required, or in which pre-deprivation

procedures can be pared down or abbreviated, so long as "the state provides  an adequate

-12-

post-deprivation remedy." Hamilton v. Myers, 281 F.3d 520, 533 (6th Cir. 2002); see Powell v. Mikulecky, 891 F.2d 1454, 1458-59 (10th Cir. 1989). Such situations commonly occur "where the state is confronted with an emergency," or has a "legitimate governmental duty to act . . . with some urgency." Miller, 945 F.2d at 353-54; see, e.g., Porter, 93 F.3d at 305-06 (recognizing, in the context of an animal neglect case, that "where the state must of necessity act quickly . . . a postdeprivation hearing or the availability of a common law tort remedy may satisfy due process"). Thus, a claim directed at the adequacy of pre-deprivation procedures cannot be viewed in isolation from any post-deprivation remedies that may be available in this context.

In the case at bar, it is undisputed that Plaintiff received at least a cursory form of pre-deprivation notice that the dogs were to be taken from his pet store because he was present when Defendants arrived at his store to initiate these actions and hand-delivered a letter denying or revoking his permit. [Roberson Aff. ¶ 13.] In addition, a representative of Defendants contacted Plaintiff shortly after taking possession of the dogs and engaged in negotiations which resulted in the settlement agreement referenced in the parties' pleadings. [Roberson Aff. ¶ 19.] There is no evidence that Defendants terminated all of Plaintiff's property rights with respect to the dogs or permanently transferred ownership of the dogs to another party before the settlement agreement was reached. In these respects, this case is distinguishable from Porter, 93 F.3d at 303-04, where the defendants succeeded in permanently depriving an absentee owner of all his property rights in a group of horses and

transferring ownership of the horses to another party before providing him with any formal notice or opportunity to respond.

It follows that the initial enforcement action at the pet store was not a final action for purposes of the Takings Clause and does not meet the ripeness requirements for pursuing a takings claim in federal court.  This conclusion also applies to the ripeness of Plaintiff's due-process claim, because under the authorities cited above the Court's analysis of the adequacy of pre-deprivation procedures should be coextensive with the analysis of the post-deprivation remedies associated with Plaintiff's takings claim.  In other words, the Court cannot determine whether Defendants' initial enforcement action at Plaintiff's pet store went too far in burdening Plaintiff's property rights because the parties were still in the process of settlement negotiations after that date.  As of April 23, 2004, it was not yet apparent how far Defendants were prepared to go in depriving Plaintiff of his property interests without just compensation or additional procedural safeguards.

After the parties entered into their settlement agreement, a second taking allegedly occurred when Defendants failed to return the particular dogs that were the subject of that agreement.  Although they have produced no evidence of a forced entry or other unauthorized access to the facilities where these dogs were kept while in "protective custody," Defendants assert that the dogs were inadvertently stolen from them before they could return the dogs to Plaintiff pursuant to the settlement agreement.

Insofar as the loss of these dogs from Defendants' "protective custody" was a random and unauthorized occurrence, there is no viable due-process claim as to the adequacy of pre-

-14-

deprivation procedures.  There is no evidence that Defendants were in a position to predict when such random and unauthorized deprivations would occur, and thus the "very nature of the deprivation ma[kes] predeprivation process impossible." Zinermon v. Burch, 494 U.S. 113, 137 (1990); see Brown v. Muhlenberg Township, 269 F.3d 205, 213 (3d Cir. 2001).

Questions regarding the adequacy of post-deprivation procedures to enforce the parties' settlement agreement or to obtain compensation for a breach of that agreement are coextensive with Plaintiff's takings claim, which also depends on the exhaustion of post-deprivation procedures that are made available under state law.  See Rocky Mtn. Materials Asphalt, Inc., 972 F.2d at 311; J.B. Ranch, Inc., 958 F.2d at 309; Miller, 945 F.2d at 352. Accordingly, Plaintiff's procedural due-process claim is subsumed by the Court's analysis of the ripeness of his takings claim in this context as well.

"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Williamson County, 473 U.S. at 194; accord Lingle, 125 S. Ct. at 2080.  Further, "the Fifth Amendment [does not] require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." Williamson County, 473 U.S. at 194 (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 124-125 (1974)).  Thus, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195; accord J.B. Ranch, Inc., 958 F.2d at 308.  Such procedures include both

-15-

administrative and judicial remedies afforded by the State.  See, e.g., Miller, 945 F.2d at 352

(concluding that a federal takings claim was unripe where "the plaintiffs have pending under

Wyoming law an inverse condemnation action to recover compensation for the loss of their

homes"); Sandy Creek Investors, Ltd., 325 F.3d at 625-26 (concluding that federal takings

claims were unripe and remanding state-law claims to state court).

Under these authorities, the federal takings claim arising from Defendants' apparent

failure to perform their obligations under the parties' settlement agreement is not ripe for

adjudication in federal court at this time because Plaintiff has not shown that he has

exhausted available state procedures under which he may obtain compensation for this

taking.  There is no evidence in the record that Plaintiff instituted any administrative

proceedings to challenge the denial or revocation of any permits, and the parties' settlement

agreement appears to contemplate that no such challenges would occur.

As for Defendants' failure to return the dogs pursuant to the settlement agreement,

Plaintiff's *Complaint* asserts claims under state law for Defendants' breach of that agreement

(Count 1), conversion of Plaintiff's property (Count 5), abrogation of their duties with

respect to the bailment of Plaintiff's property (Count 6), and negligence with respect to the

loss of that property (Count 7).  The parties have not shown that it would be futile for

Plaintiff to pursue just compensation from Defendants in state court under these alternative

theories.  Indeed, it would seem odd if state law did not afford some compensatory remedy

where the Defendants took possession of Plaintiff's dogs for the express purpose of placing

them in "protective custody," and then proceeded to leave the dogs in a facility that was so

lacking in protection that the dogs were allowed to disappear without a trace of evidence as to their fate.

In this regard, the Court notes that the State of New Mexico waives sovereign immunity for claims based on written contracts, see N.M. Stat. Ann. § 37-1-23 (Michie 2004), and the pleadings and evidence of record include writings which arguably may satisfy this requirement [Doc. 3, ¶ 17; Ex. G to Doc. 22], see Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 732, 918 P.2d 7, 11 (1996). In addition, state law may provide other mechanisms for obtaining just compensation in this context. See Townsend v. State ex rel. State Highway Dep't, 117 N.M. 302, 303-04, 871 P.2d 958, 959-60 (1994) (concluding that New Mexico's Tort Claims Act does not waive sovereign immunity for the tort of conversion but that the state's inverse-condemnation statute provides the appropriate and exclusive remedy "when property is taken or damaged for public use by a condemnor without paying compensation or initiating condemnation proceedings"); cf. Castillo v. County of Santa Fe, 107 N.M. 204, 207, 755 P.2d 48, 51 (1988) (applying statutory waiver of sovereign immunity for damages caused by the negligence of public employees in allowing a dog to run loose on the grounds of a public housing project); Lebow v. McIntyre, 79 N.M. 753, 754, 449 P.2d 661, 662 (Ct. App. 1968) (concluding that if a bailor makes out a prima facie case of a bailee's negligence by showing delivery of a horse to a bailee in good condition and the bailee's failure to return the horse, then the law presumes negligence and casts upon the bailee the burden of going forward with explanatory evidence to show that the loss did not occur through his negligence or that he exercised of a degree of care sufficient

to rebut the presumption of negligence); Salazar v. Garde, 35 N.M. 353, 354, 298 P. 661, 662 (1931) (applying bailment principles to a breach-of-contract action).

In this case, the parties do not dispute that they entered into a settlement agreement concerning the taking of Plaintiff's dogs. It is also beyond dispute that Plaintiff has not yet exhausted the available state procedures to obtain just compensation for the alleged taking of the dogs referenced in the parties' settlement agreement, because Plaintiff's claim for enforcement of the settlement agreement under state law was conjoined with his federal due-process and takings claims, and then the entire action was removed to federal court before any of the state-law claims had been adjudicated. Based on these undisputed facts, it appears that Plaintiff's federal claims will not ripen until his state-law claims are resolved. See Sandy Creek Investors, Ltd., 325 F.3d at 626.

The same principle of ripeness applies to Plaintiff's claims for declaratory and injunctive relief based on the alleged unconstitutionality of the City ordinance. Federal courts "have found it particularly important in takings cases to adhere to [the Supreme Court's] admonition that 'the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.'" Pennell v. City of San Jose, 485 U.S. 1, 10 (1988) (quoting Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. 264, 294-295 (1981)). Adhering to this admonition is important because "federal courts are not 'roving commissions assigned to pass judgment on the validity of the nation's laws,' but instead address only specific 'cases' and 'controversies.'" Ward v. Utah, 398 F.3d 1239, 1246 (10th Cir. 2005) (quoting U.S. Const. art. III, and Citizens Concerned for

<u>Separation of Church and State v. City and County of Denver</u>, 628 F.2d 1289, 1295 (10th Cir.1980)).

Prior to 2005, there were authorities from lower courts allowing parties to proceed with facial challenges that question whether a particular piece of legislation substantially advances a legitimate governmental interest even though the extent of the taking caused by that legislation and the availability of state procedures for obtaining just compensation had yet to be determined.  See <u>Sinclair Oil Corp. v. County of Santa Barbara</u>, 96 F.3d 401, 405-07 (9th Cir. 1996) (collecting cases).  But the Supreme Court's recent opinion in <u>Lingle</u>, 125 S. Ct. at 2085, abrogated those authorities by eliminating the "substantial governmental interest" test from the Court's takings jurisprudence.  See <u>San Remo Hotel, L.P. v. City and County of San Francisco</u>, 125 S. Ct. 2491, 2506 n.25 (2005).

As clarified in <u>Lingle</u>, 125 S. Ct. at 2083, the takings inquiry "focuses directly upon the severity of the burden that government imposes upon private property rights."  This focus necessarily requires exhaustion of available state procedures for obtaining just compensation before a takings claim may ripen in federal court.  See <u>Sinclair Oil Corp.</u>, 96 F.3d at 405-07; <u>cf.</u> <u>San Remo Hotel, L.P.</u>, 125 S. Ct. at 2506 (addressing procedural issues occasioned by litigation involving unripened takings challenges).

The case at bar does not involve a free-standing facial challenge to the City's ordinance on substantive due-process grounds, and in any event there is no evidence in the record to suggest that Defendants' ordinance lacks a substantial connection to a legitimate governmental interest in protecting sick or neglected animals or preventing further harms

-19-

occasioned by such illness or neglect.  In this regard, the Supreme Court has noted that private property rights remain subject to the "'background principles of nuisance and property law' [which] independently restrict the owner's intended use of the property." Lingle, 125 S. Ct. at 2081 (quoting Lucas, 505 U.S. at 1026-32).  These background principles recognize that "the power to seize and dispose of neglected animals is analogous to the state's traditional power to take action to abate a nuisance or protect the public health." Porter, 93 F.3d at 310.

While Plaintiff may contend that his dogs were not sick or neglected, a facial challenge to the ordinance relies on the premise that it is unconstitutional in all of its applications, including those where the animal in question is, in fact, sick or neglected.  See generally Ward, 398 F.3d at 1251; Branson Sch. Dist.RE-82 v. Romer, 161 F.3d 619, 636, 643 (10th Cir. 1998).  Thus, there does not appear to be any viable, free-standing, facial due-process claim that would fall outside the purview of the ripeness principles applicable to Plaintiff's takings claim.  The Court is wary of recognizing such a claim in this context given the Tenth Circuit's admonition against enabling "a resourceful litigant to circumvent the ripeness requirements simply by alleging a more generalized due process or equal protection violation."  See Bateman, 89 F.3d at 709.

For all of the above reasons, I will order the parties to show cause in writing why Plaintiff's federal claims should not be dismissed without prejudice for lack of subject-matter jurisdiction based on the ripeness principles discussed above.  In the event that Plaintiff identifies any alternative federal claim in his pleadings that falls outside the purview of these

ripeness principles, I will also direct the parties to show cause why that claim is substantial enough to survive a motion for summary judgment in Defendants' favor.

### C.    Plaintiff's State Law Claims

This action was removed to federal court based solely on the alleged presence of a federal question.  [Doc. 1.]  There is no allegation or evidence that the parties' citizenship is diverse.  Accordingly, this Court does not have original jurisdiction over Plaintiff's state-law claims for breach of the settlement agreement, conversion, breach of the duties of a bailee, or negligence.  Rather, Plaintiff's state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).

If the Court were to dismiss  Plaintiff's federal due-process and takings claims because they were not ripe when this action was removed from state court, then the basis for exercising supplemental jurisdiction over Plaintiff's state-law claims may be completely undermined, and it may be necessary to remand all remaining claims to state court for further proceedings.  See Sandy Creek Investors, Ltd., 325 F.3d at 626.  Even if the federal claims were dismissed on the merits rather than on jurisdictional grounds, "district courts may decline to exercise supplemental jurisdiction over" the remaining claims and instead remand them to state court.  28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Before declining to exercise supplemental jurisdiction, however, it is prudent to consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.  See Anglemyer v.

Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995).  At this juncture, the Court is not convinced that these factors weigh in favor of retaining jurisdiction in the event that Plaintiff's federal claims are dismissed, because the property rights at issue in this case are creatures of state law, and whether Plaintiff may obtain compensation from Defendants for breach of the settlement agreement, conversion, or the negligence of a bailee raise novel or complex issues of state law.  See 28 U.S.C. § 1367(c)(1).  Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary.  See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).  In addition, a decision not to exercise supplemental jurisdiction is not necessarily fatal to Plaintiff's state-law claims, as federal law provides for the remand of these state-law claims to the state court where this action originated.  See, e.g., 28 U.S.C. §§ 1441(c), 1447(c).

For these reasons, the Court also will order the parties to show cause why Plaintiff's state-law claims should not be remanded to the Second Judicial District Court for the State of New Mexico, County of Bernalillo, in the event that his federal claims are dismissed for any reason.  In raising this issue, it is not the Court's intention to unwittingly force the parties into the kind of procedural morass addressed by the Supreme Court in San Remo Hotel, 125 S. Ct. at 2506.  Thus, in responding to this order the parties are encouraged to identify any procedure they want this Court or the state court to consider for reserving (or otherwise avoiding preclusion of) Plaintiff's federal claims in the event that they were to become ripe for judicial review upon final resolution of Plaintiff's state-law claims.

III.   **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for partial summary judgment is denied, and the parties are directed to show cause in writing by no later than January 23, 2006, as to why: (1) Plaintiff's federal due-process and takings claims should not be dismissed without prejudice for lack of subject-matter jurisdiction; (2) Defendants are not entitled to summary judgment on any alternative federal claims in Plaintiff's pleadings that may fall outside the purview of the Court's jurisdictional rulings; and (3) this matter should not be remanded to the Second Judicial District Court for the District of New Mexico, County of Bernalillo.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Motion for Summary Judgment and for Declaratory Ruling that Albuquerque City Ordinance 9-2-3-18 is Unconstitutional* [Doc. 21] is **DENIED**.

**IT IS FURTHER ORDERED** that the parties are directed to show cause in writing by no later than January 23, 2006, as to why:  (1) Plaintiff's federal due-process and takings claims should not be dismissed without prejudice for lack of subject-matter jurisdiction; (2) Defendants are not entitled to summary judgment on any alternative federal claims in Plaintiff's pleadings that may fall outside the purview of the Court's jurisdictional rulings; and (3) this matter should not be remanded to the Second Judicial District Court for the District of New Mexico, County of Bernalillo.

**SO ORDERED** this 9th day of January, 2006, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**