# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARK ROBERSON**,

        Plaintiff,

vs.                                         No. CIV 04-1284 MCA/DJS

**CITY OF ALBUQUERQUE**,
a municipal corporation, and
**CITY COUNCILWOMAN**
**SALLY MAYER**, in her official
and individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the parties' responses [Doc. 42, 43] to the Court's *Memorandum Opinion and Order* [Doc. 41] filed on January 9, 2006, directing them to show cause why Plaintiff's federal claims should not be dismissed without prejudice and why his remaining claims should not be remanded to state court. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court determines that Plaintiff's federal claims are not ripe and that the proper disposition of this matter is to dismiss Plaintiff's federal claims without prejudice and remand his remaining claims to the Second Judicial District Court for the State of New Mexico, County of Bernalillo, pursuant to 28 U.S.C. § 1447(c).

I.    **BACKGROUND**

The history of this litigation is set forth in the Court's *Memorandum Opinion and Order* [Doc. 41] filed on January 9, 2006.  In that ruling, the Court denied *Plaintiff's Motion for Summary Judgment and for Declaratory Ruling that Albuquerque City Ordinance 9-2-3-18 is Unconstitutional* [Doc. 21] and ordered the parties to show cause in writing by no later than January 23, 2006, as to why:  (1) Plaintiff's federal due-process and takings claims should not be dismissed without prejudice for lack of subject-matter jurisdiction; (2) Defendants are not entitled to summary judgment on any alternative federal claims in Plaintiff's pleadings that may fall outside the purview of the Court's jurisdictional rulings; and (3) this matter should not be remanded to the Second Judicial District Court for the District of New Mexico, County of Bernalillo.

On January 20, 2006, Defendants filed a response stating their agreement with the Court's analysis of why Plaintiff's federal due-process and takings claims should be dismissed without prejudice because they are unripe, and why the remaining state-law claims should be remanded to state court.  Defendants also agreed with the Court's analysis of why their were no alternative federal claims in Plaintiff's pleadings that fall outside the purview of the Court's ripeness analysis such that they could provide an independent basis for exercising federal jurisdiction.  [Doc. 42.]

On January 23, 2006, Plaintiff filed a response stating his agreement that the action should be remanded to the state court on the grounds that this Court lacks subject-matter jurisdiction.  Plaintiff, however, does not agree that this Court should dismiss any of his

federal claims before remanding the case to state court.  [Doc. 43.]  Thus, Plaintiff requests that this Court remand the entire action to state court without dismissing any claims. Plaintiff also requests an award of attorney fees and costs associated with such a remand pursuant to 28 U.S.C. § 1447(c).

## II.   ANALYSIS

### A.   Standard of Review

Verifying its subject-matter jurisdiction is a federal court's "first duty" in every case. McCready v. White, 417 F.3d 700, 702 (7th Cir. 2005).  The Court's subject-matter jurisdiction must be established before it may independently rule on the merits of any of Plaintiff's claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-102 (1998); Sandy Creek Investors, Ltd. v. City of Jonestown, 325 F.3d 623, 626 (5th Cir. 2003); J.B. Ranch, Inc. v. Grand County, 958 F.2d 306, 308 (10th Cir. 1992).

Ripeness is both a question of subject-matter jurisdiction under Article III of the United States Constitution and an integral component of takings and due-process claims under its Fifth and Fourteenth Amendments.  See Bateman v. City of West Bountiful, 89 F.3d 704, 706 (10th Cir. 1996); J.B. Ranch, Inc., 958 F.2d at 308.  The ripeness of Plaintiff's takings and due-process claims may be questioned *sua sponte*, see J.B. Ranch, Inc., 958 F.3d at 308, or by means of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), see Bateman, 89 F.3d at 706.  While the issue was raised *sua sponte* in this case, the Court has employed the procedure for addressing a motion to dismiss under

Fed. R. Civ. P. 12(b)(1), which affords the parties adequate notice and opportunity to respond.  See Ricketts v. Midwest Nat'l Bank, 874 F.2d 1177, 1181-84 (7th Cir. 1989).

Motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms:  (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir.2002).  In reviewing a facial attack, the Court construes Plaintiff's pleading liberally, accepts all uncontroverted, well-pleaded factual allegations as true, and views all reasonable inferences in Plaintiff's favor.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  "In reviewing a  factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts,'" and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion.  Id. (quoting Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995)).  Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

### B.   Dismissal Versus Remand

The parties do not dispute the applicability of this general framework for determining whether Plaintiff's *Complaint* sets forth any federal claims which are ripe for adjudication. Because this action originated in state court and was subsequently removed to federal court

pursuant to 28 U.S.C. §§ 1441 and 1446, however, Plaintiff questions whether the proper remedy under this framework is to dismiss his federal claims without prejudice based on a lack of ripeness or to remand the entire action to state court with all claims left intact.

Plaintiff correctly points out that if a federal court determines that it lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1447(c) over an action that has been removed pursuant to 28 U.S.C. §§ 1441 and 1446, then that federal court does not have the option of dismissing the entire action without prejudice in lieu of remanding the action to state court. See Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 87 (1991). Similarly, if a federal court lacks subject-matter jurisdiction over the entire action at the time of removal, then that court generally may not enter judgment on certain claims within that action, or dismiss certain claims with prejudice, before remanding the action to state court. See Cunningham v. BHP Petroleum Great Britain PLC, 427 F.3d 1238, 1245 (10th Cir. 2005). Further, a federal court generally may not decline to remand any remaining claims over which it lacks subject-matter jurisdiction on the grounds that those claims are likely to be futile when raised in state court. See Fent v. Okla. Water Res. Bd., 235 F.3d 553, 557-58 (10th Cir. 2000).

But the posture of the present case is distinguishable in many respects from the authorities cited in the preceding paragraph and in Plaintiff's *Response*. [Doc. 43.] Here the Court does not propose to dismiss the entire action without prejudice in lieu of remanding certain claims to state court, nor does the Court propose to enter judgment for either party or dismiss any claims with prejudice before finding that subject-matter jurisdiction is lacking

-5-

over those claims.  Indeed, the very reason the Court denied Plaintiff's motion for summary judgment on his federal takings and due-process claims was that the Court lacks subject-matter jurisdiction over those claims because they are unripe, and thus the Court is not in a position to enter judgment for either party on those claims.  [Doc. 41.]

The proper remedy for this situation is not simply to remand the entire action, including Plaintiff's federal claims, to state court so that the state court may rule on Plaintiff's summary judgment motion or otherwise decide the merits of those federal claims. For in the event that Plaintiff's federal claims were again presented to the state court for disposition on remand, Defendants would again have the option of removing the entire action to federal court based on the presence of a federal question under 28 U.S.C. §§ 1441 and 1446.  Plaintiff cannot have it both ways by preventing Defendants from removing this action to federal court while retaining his federal claims for adjudication in state court.  Either his *Complaint* asserts federal claims which are removable to federal court, or the federal claims must be dismissed without prejudice from his *Complaint* before the matter is remanded so that he may proceed to litigate his state-law claims in state court in the first instance, as required under the United States Supreme Court's takings and due-process jurisprudence.

Because the jurisdictional viability of Plaintiff's federal claims is inextricably intertwined with the question whether the action is removable under 28 U.S.C. §§ 1441 and 1446, this Court must rule on the jurisdictional viability of these claims before it can determine whether to remand the action to state court.  In this respect, the present action is somewhat analogous to the portion of the district court's order that was affirmed in <u>Fent</u>, 235

F.3d at 556-57.  In that case, the United States removed an action pursuant to 28 U.S.C. § 1442(a)(1) in order to raise the defense of sovereign immunity.  See id. at 555.  The federal district court correctly ruled that the plaintiffs' claims against the United States were barred by sovereign immunity, and thus the plaintiffs' claims against the United States were properly dismissed from the action *before* the federal court decided whether to remand the claims against the other defendants to state court.  See id. at 556-57.

The point at which the federal district court went astray in Fent occurred when it decided to rule on the futility of the plaintiffs' remaining claims against the other defendants *after* the United States was dismissed from the case, and there was no longer any basis for removal to federal court under 28 U.S.C. § 1442(a)(1).  See id. at 557-58.  Further, the reason for the lack of federal jurisdiction over those remaining claims was Eleventh Amendment immunity, which did not necessarily apply to any remaining claims once the matter was remanded to state court, and which, unlike the sovereign immunity of the United States, did not provide an independent basis for removing the action to federal court.  See id. For these reasons, the Tenth Circuit determined that the action should have been remanded to state court, but only after the United States was dismissed as a party.  See id.

I read Fent to recognize that there are circumstances in which a federal court may first dismiss certain claims or parties from a civil action in order to resolve a jurisdictional question, and then remand the remaining claims or parties to state court based on the answer to that jurisdictional question.  Such circumstances may fall under the more general principle that "federal courts always have jurisdiction to consider their own jurisdiction," even when

-7-

they ultimately conclude that they do not yet have jurisdiction over the merits of the claims asserted in a civil action at a particular time. Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1093-94 (10th Cir. 2005) (citing Combs v. PriceWaterhouse Coopers LLP, 382 F.3d 1196, 1204 (10th Cir.2004)).

I will apply this procedure here by first answering the question whether the federal claims asserted in Plaintiff's *Complaint* must be dismissed without prejudice because they are not ripe for adjudication. I will then use my answer to that question to determine whether any remaining claims must be remanded to state court.

### C.      Ripeness of Plaintiff's Federal Claims

The jurisdictional question at issue here is one of ripeness, which forms an integral part of the United States Supreme Court's takings and due-process jurisprudence under the Fifth and Fourteenth Amendments to the United States Constitution, and which in turn forms an integral part of the legal justification that is necessary for removing an action to federal court or remanding it to state court. To aid in answering this question, the Court's *Memorandum Opinion and Order* [Doc. 41] filed on January 9, 2006, directed the parties to show cause why Plaintiff's federal takings and due-process claims are ripe for adjudication in federal court, and to identify any other, free-standing federal claims asserted in Plaintiff's *Complaint* which fall outside the purview of the ripeness principles that apply to his takings and due-process claims.

In their responses, the parties have not identified any other, free-standing federal claims in Plaintiff's *Complaint* that would fall outside the purview of the ripeness principles

applicable to his takings and due-process claims and that could, therefore, provide an independent basis for removal to federal court.  [Doc. 42, 43.]  In light of these responses, I conclude that the only federal claims asserted in Plaintiff's *Complaint* are the interrelated takings and due-process claims previously discussed in the Court's *Memorandum Opinion and Order* [Doc. 41] filed on January 9, 2006.  The absence of any other, free-standing federal claims means that the basis for removal or remand of this action stands or falls on the ripeness of Plaintiff's federal takings and due-process claims.[1]

The parties' responses also do not show cause why any of Plaintiff's federal takings and due-process claims are ripe for adjudication in federal court at this juncture.  On the contrary, they both appear to agree with the substance of the analysis previously articulated in the *Memorandum Opinion and Order* [Doc. 41] filed on January 9, 2006.  For purposes of making a clear record,  I will repeat a portion of that analysis here, as modified to address the concerns raised in the parties responses.

The two federal claims asserted in Plaintiff's *Complaint* arise under the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. The Supreme Court has recognized that the Fifth Amendment's prohibition on the taking of private property without just compensation applies to the states by virtue of the Fourteenth Amendment.  See Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (citing Chicago B.

---

[1]The parties' failure to identify any other, free-standing federal claims also means that it is unnecessary for the Court to rule on the merits of such claims, by means of summary judgment or otherwise, before turning to the interrelated questions of ripeness and remand.

& Q. R. Co. v. Chicago, 166 U.S. 226 (1897)).  It follows that Plaintiff's takings claims are properly analyzed under the Supreme Court's Fifth Amendment takings jurisprudence rather than a more generalized substantive due-process framework.  See Miller v. Campbell County, 945 F.2d 348, 352-53 (10th Cir. 1991).  In this regard, the Supreme Court has recently distinguished its takings jurisprudence from the more generalized substantive due-process inquiry and concluded that the question whether a governmental regulation or restriction on private property advances a substantial governmental interest "has no place in our takings jurisprudence" as a "free-standing takings test."  Lingle v. Chevron U.S.A. Inc., 125 S. Ct. 2074, 2083-87 (2005).

Inasmuch as Plaintiff alleges a procedural due-process claim regarding the adequacy of the procedures Defendants employed to deprive him of his property, such a claim also may subsumed by the Court's analysis of the ripeness of his takings claims.  See Rocky Mtn. Materials & Asphalt, Inc. v. Bd. of County Comm'rs of El Paso County, 972 F.2d 309, 311 (10th Cir. 1992); J.B. Ranch, Inc., 958 F.2d at 309; Miller, 945 F.2d at 352.  "When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, we have required the plaintiff to utilize the remedies applicable to the takings claim."  Rocky Mtn. Materials & Asphalt, Inc., 972 F.2d at 311.  In this context, "[i]t is appropriate . . . to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause."  Miller, 945 F.2d at 352 (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  "A contrary holding . . . would enable

a resourceful litigant to circumvent the ripeness requirements [for a takings claim] by alleging a more generalized due process . . . violation." Bateman, 89 F.3d at 709.

      For these reasons, the Court analyzes Plaintiff's procedural due-process claim together with his takings claim. Ripeness is a concern as to both claims. See Rocky Mtn. Materials & Asphalt, Inc., 972 F.2d at 311.

      "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." Palazzolo, 533 U.S. at 617. Takings that require just compensation may occur in several ways. See Lingle, 125 S. Ct. at 2081-83. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." Id. at 2081.

      The Supreme Court also has recognized a category of "regulatory takings" that may be compensable under the Fifth Amendment where government regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster." Id. In particular, government regulation may constitute a taking *per se* where it "requires an owner to suffer a permanent physical invasion of her property," or where it "completely deprive[s] an owner of 'all economically beneficial us[e]' of her property." Id. (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992)). Outside of these special categories, regulatory takings are generally governed by the standards set forth in Penn Central Transp. Co. v. City of N.Y., 438 U.S. 104, 124 (1978), which depend on "a complex of factors including the regulation's economic effect on the landowner, the extent to which the

regulation interferes with reasonable investment-backed expectations, and the character of the government action." Palazzolo, 533 U.S. at 617.

While many of the authorities cited above concern the taking of real property without just compensation, the principles articulated therein may apply to the taking of personal property as well. See, e.g., Brown v. Legal Found. of Wash., 538 U.S. 216 (2003) (analyzing a claim that a state law requiring the deposit of certain client funds into "interest on lawyers' trust accounts" (IOLTA) to fund the provision of legal services for the poor effected an uncompensated taking of the clients' property in violation of the Fifth Amendment); Rose Acre Farms, Inc. v. United States, 373 F.3d 1177 (Fed. Cir. 2004) (analyzing a claim that government regulation of egg sales from farms that tested positive for salmonella bacteria effected a taking requiring compensation under the Fifth Amendment). And while the parties cite no New Mexico authorities on point, the law in most jurisdictions now treats dogs and other pets as items of personal property, see Altman v. City of High Point, 330 F.3d 194, 201-204 (4th Cir. 2003), subject to the "'background principles of nuisance and property law' [which] independently restrict the owner's intended use of the property," Lingle, 125 S. Ct. at 2081 (quoting Lucas, 505 U.S. at 1026-32); see Porter v. DiBlasio, 93 F.3d 301, 310 (7th Cir. 1996).

In this case, Plaintiff's *Complaint* alleges that on April 23, 2004, Defendants denied or revoked a permit for Plaintiff's pet store, "the Puppy Patch," and took possession of 28 dogs located therein pursuant to Albuquerque City Ordinance 9-2-3-18, which provides that Defendants may take privately-owned animals into their "protective custody" upon a finding

by the Mayor that the animal "is or will be without proper care because of injury, illness, incarceration or absence of the owner of such animal." [Roberson Aff. ¶¶ 13-15.] The ordinance also lists a number of financial and procedural requirements that the animals' owner must satisfy in order to get the animals back after they have been placed in Defendants' "protective custody."

Defendants did not have occasion to apply all of these requirements in this case, because after Plaintiff's dogs were taken into protective custody, the parties entered into a settlement agreement memorialized in a letter dated May 6, 2004. [Ex. G to Doc. 22.] Under this agreement, Defendants were to return at least two of the dogs to Plaintiff, and a third dog was to be transferred to a third party. The settlement agreement did not provide a final resolution of the parties' dispute, however, because Defendants failed to return the dogs pursuant to this agreement.

Under these circumstances, Plaintiff's *Complaint* can be reasonably construed as alleging a direct government appropriation or physical taking of his dogs for the benefit of the public, as well as a regulatory taking occasioned by the onerous requirements he would have to satisfy in order to get his dogs back once they were in Defendants' "protective custody." Plaintiff's *Complaint* also can be reasonably construed as alleging such takings of his property on two occasions:   first when Defendants took possession of all the dogs in Plaintiff's pet store and denied or revoked his permits on April 23, 2004, and second when they failed to return the smaller number of dogs identified in the parties' settlement agreement by May 21, 2004.

I conclude that the first of these occurrences does not provide the basis for a jurisdictionally viable federal claim under the Takings Clause of the Fifth Amendment or the Due Process Clause of the Fourteenth Amendment because it was quickly superseded by the parties' settlement agreement.  I also conclude that the second of these occurrences does not give rise to a jurisdictionally viable takings or due-process claim at this time because such a claim is unripe.

There are two ripeness requirements which must be satisfied before the merits of a civil action for an unlawful taking without just compensation may be litigated in federal court.  First, Plaintiffs must satisfy a *finality* requirement by demonstrating that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985); accord Bateman, 89 F.3d at 706; Miller, 945 F.2d at 352.  Second, Plaintiffs also must satisfy an *exhaustion* requirement by showing that they have "sought compensation through the procedures the State has provided for doing so."  Williamson County, 473 U.S. at 194; accord Bateman, 89 F.3d at 708; Miller, 945 F.2d at 352.

With respect to the finality requirement, the Supreme Court's takings jurisprudence "uniformly reflect[s] an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it."  McDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 351 (1986).  The Supreme Court has explained this finality requirement as follows:

a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law.  As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet occurred.

Palizzolo, 533 U.S. at 620-21.  Before such processes have reached their conclusion, courts cannot determine whether a regulation goes too far in burdening property rights because they do not yet know how far the regulation goes.  See id. at 622; McDonald, Sommer & Frates, 477 U.S. at 348.

Similar principles apply to Plaintiff's procedural due-process claim.  Due process is a "flexible" concept that only "calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  Accordingly, there are situations in which no pre-deprivation hearing is required, or in which pre-deprivation procedures can be pared down or abbreviated, so long as "the state provides an adequate post-deprivation remedy."  Hamilton v. Myers, 281 F.3d 520, 533 (6th Cir. 2002); see Powell v. Mikulecky, 891 F.2d 1454, 1458-59 (10th Cir. 1989).  Such situations commonly occur "where the state is confronted with an emergency," or has a "legitimate governmental duty to act . . . with some urgency."  Miller, 945 F.2d at 353-54; see, e.g., Porter, 93 F.3d at 305-06 (recognizing, in the context of an animal neglect case, that "where the state must of necessity act quickly . . . a postdeprivation hearing or the availability of a common law tort remedy may satisfy due process").  Thus, a claim directed at the adequacy of pre-

deprivation procedures cannot be viewed in isolation from any post-deprivation remedies that may be available in this context.

In the case at bar, it is undisputed that Plaintiff received at least a cursory form of pre-deprivation notice that the dogs were to be taken from his pet store because he was present when Defendants arrived at his store to initiate these actions and hand-delivered a letter denying or revoking his permit.  [Roberson Aff. ¶ 13.]  In addition, a representative of Defendants contacted Plaintiff shortly after taking possession of the dogs and engaged in negotiations which resulted in the settlement agreement referenced in the parties' pleadings.  [Roberson Aff. ¶ 19.]  There is no evidence that Defendants terminated all of Plaintiff's property rights with respect to the dogs or permanently transferred ownership of the dogs to another party before the settlement agreement was reached.  In these respects, this case is distinguishable from Porter, 93 F.3d at 303-04, where the defendants succeeded in permanently depriving an absentee owner of all his property rights in a group of horses and transferring ownership of the horses to another party before providing him with any formal notice or opportunity to respond.

It follows that the initial enforcement action at the pet store was not a final action for purposes of the Takings Clause and does not meet the ripeness requirements for pursuing a takings claim in federal court.  This conclusion also applies to the ripeness of Plaintiff's due-process claim, because under the authorities cited above the Court's analysis of the adequacy of pre-deprivation procedures should be coextensive with the analysis of the post-deprivation remedies associated with Plaintiff's takings claim.  In other words, the Court cannot

determine whether Defendants' initial enforcement action at Plaintiff's pet store went too far in burdening Plaintiff's property rights because the parties were still in the process of settlement negotiations after that date.  As of April 23, 2004, it was not yet apparent how far Defendants were prepared to go in depriving Plaintiff of his property interests without just compensation or additional procedural safeguards.

After the parties entered into their settlement agreement, a second taking allegedly occurred when Defendants failed to return the particular dogs that were the subject of that agreement.  Although they have produced no evidence of a forced entry or other unauthorized access to the facilities where these dogs were kept while in "protective custody," Defendants assert that the dogs were inadvertently stolen from them before they could return the dogs to Plaintiff pursuant to the settlement agreement.

Insofar as the loss or theft of these dogs from Defendants' "protective custody" was a random and unauthorized occurrence, it is not reasonable to construe Plaintiff's *Complaint* as asserting a viable due-process claim as to the adequacy of pre-deprivation procedures. There is no allegation that Defendants were in a position to predict when such random and unauthorized deprivations would occur, and thus the "very nature of the deprivation ma[kes] predeprivation process impossible."  Zinermon v. Burch, 494 U.S. 113, 137 (1990); see Brown v. Muhlenberg Township, 269 F.3d 205, 213 (3d Cir. 2001).

Questions regarding the adequacy of post-deprivation procedures to enforce the parties' settlement agreement or to obtain compensation for a breach of that agreement are coextensive with Plaintiff's takings claim, which also depends on the exhaustion of post-

deprivation procedures that are made available under state law.  See Rocky Mtn. Materials

Asphalt, Inc., 972 F.2d at 311; J.B. Ranch, Inc., 958 F.2d at 309; Miller, 945 F.2d at 352.

Accordingly, Plaintiff's procedural due-process claim is subsumed by the Court's analysis

of the ripeness of his takings claim in this context as well.

"The Fifth Amendment does not proscribe the taking of property;  it proscribes taking

without just compensation."  Williamson County, 473 U.S. at 194; accord Lingle, 125 S. Ct.

at 2080.  Further, "the Fifth Amendment [does not] require that just compensation be paid

in advance of, or contemporaneously with, the taking; all that is required is that a

'reasonable, certain and adequate provision for obtaining compensation' exist at the time of

the taking."  Williamson County, 473 U.S. at 194 (quoting Regional Rail Reorganization Act

Cases, 419 U.S. 102, 124-125 (1974)).  Thus, "if a State provides an adequate procedure for

seeking just compensation, the property owner cannot claim a violation of the Just

Compensation Clause until it has used the procedure and been denied just compensation."

Id. at 195; accord J.B. Ranch, Inc., 958 F.2d at 308.   Such procedures include both

administrative and judicial remedies afforded by the State.  See, e.g., Miller, 945 F.2d at 352

(concluding that a federal takings claim was unripe where "the plaintiffs have pending under

Wyoming law an inverse condemnation action to recover compensation for the loss of their

homes"); Sandy Creek Investors, Ltd., 325 F.3d at 625-26 (concluding that federal takings

claims were unripe and directing that state-law claims be remanded to state court).

Under these authorities, the federal takings claim arising from Defendants' apparent

failure to perform their obligations under the parties' settlement agreement is not ripe for

adjudication at this time because Plaintiff has not shown that he has exhausted the procedures available under state law which might provide a source of compensation or return of property without reliance on the Fifth or Fourteenth Amendments to the United States Constitution or other federal laws.  In particular, there is no evidence or allegation in the pleadings of record that Plaintiff instituted any administrative proceedings to challenge the denial or revocation of any permits, and the parties' settlement agreement appears to contemplate that no such challenges would occur.

As for Defendants' failure to return the dogs pursuant to the settlement agreement, Plaintiff's *Complaint* asserts claims under state law for Defendants' breach of that agreement (Count 1), conversion of Plaintiff's property (Count 5), abrogation of their duties with respect to the bailment of Plaintiff's property (Count 6), and negligence with respect to the loss of that property (Count 7).  The parties have not shown that it would be futile for Plaintiff to pursue just compensation from Defendants in state court under these alternative theories which do not depend on federal law.[2]  Indeed, it would seem odd if state law did not afford some compensatory remedy where the Defendants took possession of Plaintiff's dogs for the express purpose of placing them in "protective custody," and then proceeded to leave

_____

[2]I recognize that the potential futility of state-law claims is not a valid basis for electing to dismiss such claims in lieu of remanding them to state court.  See Fent, 235 F.3d at 557-58.  The question of futility is addressed here only insofar as it may be relevant to the ripeness inquiry for federal takings claims. See Landmark Land Co. v. Buchanan, 874 F.2d 717, 721-22 (10th Cir. 1989), abrogated in part on other grounds by Fed. Lands Legal Consortium v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999).

the dogs in a facility that was so lacking in protection that the dogs were allowed to disappear without a trace of evidence as to their fate.

In this regard, the Court notes that the State of New Mexico waives sovereign immunity for claims based on written contracts, see N.M. Stat. Ann. § 37-1-23 (Michie 2004), and the pleadings and evidence of record include writings which arguably may satisfy this requirement [Doc. 3, ¶ 17; Ex. G to Doc. 22], see Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 732, 918 P.2d 7, 11 (1996). In addition, state law may provide other mechanisms for obtaining just compensation in this context. See Townsend v. State ex rel. State Highway Dep't, 117 N.M. 302, 303-04, 871 P.2d 958, 959-60 (1994) (concluding that New Mexico's Tort Claims Act does not waive sovereign immunity for the tort of conversion but that the state's inverse-condemnation statute provides the appropriate and exclusive remedy "when property is taken or damaged for public use by a condemnor without paying compensation or initiating condemnation proceedings"); cf. Castillo v. County of Santa Fe, 107 N.M. 204, 207, 755 P.2d 48, 51 (1988) (applying statutory waiver of sovereign immunity for damages caused by the negligence of public employees in allowing a dog to run loose on the grounds of a public housing project); Lebow v. McIntyre, 79 N.M. 753, 754, 449 P.2d 661, 662 (Ct. App. 1968) (concluding that if a bailor makes out a prima facie case of a bailee's negligence by showing delivery of a horse to a bailee in good condition and the bailee's failure to return the horse, then the law presumes negligence and casts upon the bailee the burden of going forward with explanatory evidence to show that the loss did not occur through his negligence or that he exercised of a degree of care sufficient

to rebut the presumption of negligence); Salazar v. Garde, 35 N.M. 353, 354, 298 P. 661, 662 (1931) (applying bailment principles to a breach-of-contract action).

In this case, the parties do not dispute that they entered into a settlement agreement concerning the taking of Plaintiff's dogs. It is also beyond dispute that Plaintiff has not yet exhausted the available state procedures to obtain just compensation for the alleged taking of the dogs referenced in the parties' settlement agreement, because both Plaintiff's claim for enforcement of the settlement agreement under state law and his federal due-process and takings claims were pleaded in the same *Complaint* filed in state court, and then the entire action was removed to federal court before any of the state-law claims had been adjudicated. Based on these undisputed facts, it appears that Plaintiff's federal claims will not ripen until his state-law claims are resolved. See Sandy Creek Investors, Ltd., 325 F.3d at 626.

The same principle of ripeness applies to Plaintiff's claims for declaratory and injunctive relief based on the alleged unconstitutionality of the City ordinance. Federal courts "have found it particularly important in takings cases to adhere to [the Supreme Court's] admonition that 'the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.'" Pennell v. City of San Jose, 485 U.S. 1, 10 (1988) (quoting Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. 264, 294-295 (1981)). Adhering to this admonition is important because "federal courts are not 'roving commissions assigned to pass judgment on the validity of the nation's laws,' but instead address only specific 'cases' and 'controversies.'" Ward v. Utah, 398 F.3d 1239, 1246 (10th Cir. 2005) (quoting U.S. Const. art. III, and Citizens Concerned for

Separation of Church and State v. City and County of Denver, 628 F.2d 1289, 1295 (10th Cir.1980)).

Prior to 2005, there were authorities from lower federal courts allowing parties to proceed with facial challenges that question whether a particular piece of legislation substantially advances a legitimate governmental interest even though the extent of the taking caused by that legislation and the availability of state procedures for obtaining just compensation had yet to be determined. See Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401, 405-07 (9th Cir. 1996) (collecting cases). But the Supreme Court's recent opinion in Lingle, 125 S. Ct. at 2085, abrogated those authorities by eliminating the "substantial governmental interest" test from the Court's takings jurisprudence. See San Remo Hotel, L.P. v. City and County of San Francisco, 125 S. Ct. 2491, 2506 n.25 (2005).

As clarified in Lingle, 125 S. Ct. at 2083, the federal takings inquiry "focuses directly upon the severity of the burden that government imposes upon private property rights." This focus necessarily requires exhaustion of available state procedures for obtaining just compensation before a takings claim may ripen in federal court. See Sinclair Oil Corp., 96 F.3d at 405-07; cf. San Remo Hotel, L.P., 125 S. Ct. at 2506 (addressing procedural issues occasioned by litigation involving unripened takings challenges).

The case at bar does not involve a free-standing facial challenge to the City's ordinance on substantive due-process grounds arising from the United States Constitution, and in any event it is not reasonable to construe Plaintiff's *Complaint* as suggesting that Defendants' ordinance lacks a substantial connection to a legitimate governmental interest

in protecting sick or neglected animals or preventing further harms occasioned by such illness or neglect.  In this regard, the Supreme Court has noted that private property rights remain subject to the "'background principles of nuisance and property law' [which] independently restrict the owner's intended use of the property." <u>Lingle</u>, 125 S. Ct. at 2081 (quoting <u>Lucas</u>, 505 U.S. at 1026-32).  These background principles recognize that "the power to seize and dispose of neglected animals is analogous to the state's traditional power to take action to abate a nuisance or protect the public health."  <u>Porter</u>, 93 F.3d at 310.

While Plaintiff may contend that his dogs were not sick or neglected, a facial challenge to the ordinance under federal law relies on the premise that it is unconstitutional in all of its applications, including those where the animal in question is, in fact, sick or neglected.  <u>See generally</u> <u>Ward</u>, 398 F.3d at 1251; <u>Branson Sch. Dist.RE-82 v. Romer</u>, 161 F.3d 619, 636, 643 (10th Cir. 1998).  Thus, I do not construe Plaintiff's *Complaint* as stating any viable, free-standing, facial due-process claim that arises under federal law and would fall outside the purview of the ripeness principles applicable to Plaintiff's federal takings claim.  The Court is wary of recognizing such a claim in this context given the Tenth Circuit's admonition against enabling "a resourceful litigant to circumvent the ripeness requirements simply by alleging a more generalized due process or equal protection violation."  <u>See</u> <u>Bateman</u>, 89 F.3d at 709.

For all of the above reasons, I conclude that all of Plaintiff's federal claims are unripe for adjudication at this time.  Under the particular circumstances of this case, where the question of ripeness is inextricably intertwined with the question of removability, I further

-23-

conclude that the proper remedy is to dismiss Plaintiff's federal claims without prejudice before remanding the matter to state court.

I choose the remedy of dismissal without prejudice in order to make clear that there are no claims remaining in Plaintiff's *Complaint* which can provide a basis for further litigation in federal court at this juncture. But this ruling is not intended to preclude Plaintiff from litigating his state-law claims in state court, nor is it intended to preclude him from raising his federal claims again in state court in an amended pleading filed at a later date in the event that they become ripe. Plaintiff should be wary of reasserting such federal claims prematurely or without a proper foundation, however, because once they are reasserted Defendants may again elect to remove the action to federal court, thereby giving rise to another round of briefing on the intertwined issues of ripeness and removability.

###    D.    Remand of Plaintiff's State-Law Claims

As a consequence of the dismissal without prejudice of Plaintiff's federal claims, all of his remaining claims must be remanded to state court. This action was removed to federal court based solely on the presence of federal questions, which this Court has determined to be unripe. [Doc. 1.] There is no allegation or evidence that the parties' citizenship is diverse. Accordingly, this Court does not have original jurisdiction over Plaintiff's state-law claims for breach of the settlement agreement, conversion, breach of the duties of a bailee, or negligence. It follows that these remaining claims must be remanded to state court, either because this Court never had any basis for exercising subject-matter jurisdiction over them, see Sandy Creek Investors, Ltd., 325 F.3d at 626, or because this Court has declined to

-24-

exercise supplemental jurisdiction over them, see Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).

To the extent that this Court has any discretion to decide whether to exercise supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a), I decline to do so pursuant to 28 U.S.C. § 1367(c)(3), because the property rights at issue in this case are creatures of state law, and whether Plaintiff may obtain compensation from Defendants for breach of the settlement agreement, conversion, or the negligence of a bailee raise novel or complex issues of state law.  See 28 U.S.C. § 1367(c)(1).  Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary.  See Thatcher Enters., 902 F.2d at 1478.

As noted above, my decision to dismiss Plaintiff's federal claims without prejudice and not to exercise supplemental jurisdiction over his state-law claims is not necessarily fatal to any of these claims.   Federal law provides for the remand of Plaintiff's state-law claims to the state court where this action originated.  See, e.g., 28 U.S.C. §§ 1441(c) and 1447(c). And, as noted above, the dismissal without prejudice of Plaintiff's federal claims does not necessarily preclude Plaintiff from raising them again in the event that they become ripe at a later stage of this litigation.

In this regard, I asked the parties to identify any procedure they want this Court or the state court to follow in order to avoid the procedural morass that developed in San Remo Hotel, 125 S. Ct. at 2506, and ensure that Plaintiff's federal claims are not precluded in the event they become ripe at some later stage of this litigation.   They have not done so.  Thus,

-25-

apart from the caveats mentioned above, I leave it for the state court to address, on remand, what procedure, if any, should be employed for reserving Plaintiff's federal claims so that they could be reasserted in the event that they become ripe for judicial review upon final resolution of his state-law claims.

Finally, I decline to award attorney fees or costs to either party at this stage of the litigation. Plaintiff's request for an award of attorney fees and costs associated with the removal of this action appears for the first time in his response [Doc. 43] to the Court's *Memorandum Opinion and Order* [Doc. 41] filed on January 9, 2006. This request is untimely and does not afford Defendants a proper opportunity to reply.

Plaintiff's response also fails to explain with any specificity why Defendants lacked an objectively reasonable basis for removal or why there were other unusual circumstances warranting an award of attorney fees and costs associated with the removal. Such a specific explanation from Plaintiff is a necessary prerequisite to an award of attorney fees and costs in this situation--especially considering that Plaintiff previously *stipulated* to this Court's jurisdiction in the *Initial Pretrial Report* [Doc. 14] and then invoked this Court's jurisdiction by moving for summary judgment on his federal claims [Doc. 21].

Under these circumstances, I conclude that Plaintiff has failed to meet the standard for awarding attorney fees or costs under 28 U.S.C. § 1447(c) that is articulated in the Supreme Court's recent opinion in Martin v. Franklin Capital Corp., 126 S. Ct. 704 (2005). Therefore, his request for such an award is denied.

III.   **CONCLUSION**

For the foregoing reasons, Plaintiff's federal due-process and takings claims are dismissed without prejudice because they are unripe, and this matter is remanded to the Second Judicial District Court for the County of Bernalillo, State of New Mexico.

**IT IS, THEREFORE, ORDERED** that the federal due-process and takings claims asserted in Plaintiff's *Complaint* are **DISMISSED WITHOUT PREJUDICE** on the grounds that they are unripe.

**IT IS FURTHER ORDERED** that that the **PRETRIAL CONFERENCE** set for TUESDAY, February 7, 2006, at 9:00 a.m., the **CALL OF THE CALENDAR** set for THURSDAY, March 7, 2006, at 9:00 a.m., and the **JURY SELECTION/TRIAL** set for TUESDAY, March 14, 2006, at 9:00 a.m. are hereby **VACATED**.

**IT IS FURTHER ORDERED** that this matter is remanded to the Second Judicial District Court for the County of Bernalillo, State of New Mexico pursuant to 28 U.S.C. § 1447(c), each party to bear its own costs and attorney fees.

**SO ORDERED** this 26th day of January, 2006, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**